UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Anthony Fred Martin, ) | C/A No. 4:12-2100-DCN-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| William Byars, Warden Michael McCall, Lt. ) | |
| Brian DeGeorgis, Dennis Arrowood, Officer ) | |
| Brandon Eicu, Ms. Snyder and Officer ) | |
| Thurber, ) | |
| Defendants. ) | |
| _____ ) | |

# I. PROCEDURAL BACKGROUND

The Plaintiff, Anthony Fred Martin, proceeding *pro se*, filed this action under 42 U.S.C. § 1983[1] on July 30, 2012. Plaintiff is in the custody of the South Carolina Department of Corrections (SCDC) and housed at the Perry Correctional Institution (PCI). Plaintiff filed a second amended complaint on February 7, 2013. (Doc.#70). On April 22, 2013, Defendants filed a motion for summary judgment along with a memorandum and affidavits in support (hereinafter "Defendants"). (Doc. #145). Because Plaintiff is proceeding *pro se*, he was advised on or about April 23, 2013, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendants' motion for summary judgment could result in dismissal of his complaint. Plaintiff filed a response in opposition on June 10, 2013. (Doc. #175). Plaintiff filed a motion for summary

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

judgment on June 12, 2013, and Defendants filed a response in opposition. (Docs. # 178 and 179).

## II.  DISCUSSION

### A.  STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court  assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the

2

fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves).  Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### B.  ARGUMENT OF PARTIES

Plaintiff alleges Defendants violated his constitutional rights alleging sexual harassment by one of the officers and a failure to protect. Specifically, Plaintiff alleges that on December 20, 2011, three officers, Arrowood, Thurber, and Eich, came to his cell in the SMU and instructed him to remove his boxers and shoes for inspection. While in his boxers and restraints, he was told to turn and face the wall. At that time, Plaintiff alleges that while his cell was being searched by Defendant

Thurber, Defendant Officer Arrowood had an erection and began masturbating. Plaintiff asserts that Defendant Eich quickly left the cell but Defendant Thurber remained pretending to be busy looking through papers from Plaintiff's storage box. Plaintiff alleges that when he went to turn around they pulled the restraints harder alleging they pushed the steel door even tighter against the back of his calves, cuffed hands and shoulder blades. Plaintiff asserts that he was afraid he was going to be raped. However, Plaintiff makes no allegation that he was assaulted or touched in any way other than placing and removing restraints. Plaintiff alleges that on December 31, 2011, Defendant DeGeorgis was in the SMU searching cells along with other officers and began to sing the Dukes of Hazzard Them song at one point and referred to himself as "Luce Boot Dingleberry." Plaintiff alleges that Defendant Arrowood would stand outside his cell door and at the back window outside his cell masturbating. Plaintiff contends that he wrote a Request to Staff to Defendant Warden McCall in January 2012, and as a result, all of the officers were removed from the unit where Plaintiff was housed but Defendant Arrowood was later placed back in his area. Plaintiff alleges that Warden McCall and Director Byers acted with evil motives by allowing Sergeant Arrowood to return to the D-Dorm SMU after being made aware of his actions. Plaintiff alleges that Officer Thurber acted with "malicious evil motive" by allowing and concealing the incident with Arrowood. Plaintiff alleges that on June 7, 2012, near the mail room, Captain Susan Duffy and Lieutenant D. Harouff allowed another inmate to fondle himself behind the Plaintiff and that favored inmates play a "game" called the "to be the man, you''ve got to beat off the man game." Plaintiff asserts that staff members allow inmates to have sex with the officers and other inmates.

## **EXHAUSTION**

Defendants argue that Plaintiff has failed to exhaust the allegations of June 7, 2012. Defendants submitted the affidavit of Inmate Grievance Branch Chief, Ann Hallman concerning the grievance of June 7, 2012, that Captain Duffy and Lt. Harouff allowed another inmate to engage in sexual misconduct in front of the Plaintiff. Hallman attests that pursuant to SCDC Policy/Procedure, the initial step for the SCDC Inmate Grievance System is for the inmate to file a Step 1 grievance. (Hallman affidavit, doc. #145-5). An inmate has fifteen (15) days from the date an incident occurs to file a grievance. (Id.). The Warden's response to the Step 1 Grievance should be given within 40 days. (Id.). If the inmate is not satisfied with the Warden's response, he must file an appeal of the Step 1 Grievance by filing a form 10-5a or Step 2 Request within five (5) days of the receipt of the response from the warden. Id. A response is due within 60 days from receipt of the Step 2 grievance. Id. Plaintiff submitted Grievance No. PCI-1663-12, which was received on June 19, 2012, addressing the alleged June 7, 2012, incident. Thus, Defendants argue that Plaintiff's complaint was filed well before the Warden's response was due.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust the available administrative remedies before filing a 1983 action concerning conditions of his confinement. 42 U.S.C. 1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a). Accordingly, before Plaintiff may proceed with his claims in this Court, he must first

exhaust his administrative remedies available through the grievance process within the SCDC. The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); *see* Porter v. Nussle, 534 U.S. 516 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir. 2001)(exhaustion required even though Plaintiff claimed futility); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001)(exhaustion required even though Plaintiff claimed he was afraid); *see also* Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001)(unpublished opinion)(applying Booth v. Churner to affirm district court's denial of relief to Plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006). Plaintiff filed his grievance on June 19, 2012, and filed his complaint in this court on July 30, 2012. Therefore, Plaintiff filed this action before the time had lapsed for a response to his Step One Grievance.

Based on the evidence presented, Plaintiff did not exhaust this allegation. Thus, it is recommended that Defendants' motion for summary judgment (doc. #57) be granted for failure to exhaust administrative remedies with respect to the alleged incident of June 7, 2012.

Conditions of Confinement/Sexual Harassment

As to his other allegations, Defendants argue Plaintiff cannot show that the conditions of his confinement constitute cruel and unusual punishment or a Fourteenth/Eighth Amendment violation. Defendants assert that Plaintiff never alleges that Defendant Arrowood touched him inappropriately or threatened him. Plaintiff stated during the investigation into his allegations that Arrowood was

6

fully clothed at all times. Defendants contend Plaintiff makes no allegations concerning any of the other Defendants who were allegedly present at the time and makes no allegation that Defendant Arrowood entered his cell on any other occasion. Defendants deny Plaintiff allegations and state that Defendant Arrowood never had an erection or masturbated in the presence of the Plaintiff. Defendants contend Plaintiff cannot show that Defendants Byers and McCall were aware of the alleged risk and Plaintiff admits that he did not suffer the harm he claims he feared. Further, Defendants assert that the cell door was not used as a weapon and that the search of Plaintiff's cell was done according to policy and standard practice in the SMU.

      Defendants submitted several affidavits in support of their Motion for Summary Judgment. Defendants submitted the affidavit of Dennis Arrowood who attests that he is a Sergeant with the SCDC assigned to PCI. (Arrowood affidavit, doc. # 145-10). In December 2011, Plaintiff was housed in the SMU and Arrowood was assigned to the Special Management Unit (SMU). Id. SCDC policy provides that to maintain safety and security, inmates requiring more intense levels of supervision and monitoring are housed in the SMU. Id. Due to security and safety concerns, inmates in the SMU are required to strip and a strip search is performed each time an inmate leaves his cell. Id. Pursuant to SCDC policy, inmates in SMU are restrained with multiple sets of handcuffs, leg irons and a lead chain when leaving their cell or their cell is searched. Id. All inmates' cells may be searched for weapons and other contraband. Id. Arrowood recalls searching the Plaintiff's cell and that Officers Thurber and Eich were present. Id. Plaintiff would have been required to come to the door of his cell to be restrained with handcuffs and leg irons. Id. A lead chain would have been secured and would have gone through the flap of the door. Id. Standard procedure would then be to open the door so that the inmate is between the door and the wall. Id. Unless an inmate resists

or is combative, no significant pressure is placed on the door. Id. While Plaintiff's cell was being searched, no significant pressure was placed on the door and they did not deviate from the standard procedure used in all SMU searches. Id. Arrowood secured Plaintiff at the door while his cell was being searched. Any slips of paper around the window would have been removed and flushed in the toilet in the cell. Id. Arrowood attests that he has never had an erection while around the Plaintiff or masturbated in his presence. Id. Arrowood attests that he did not talk to Plaintiff about the Bible or make any statements in that regard and that there was nothing unusual about the search of Plaintiff's cell. Id. Arrowood attests that he was not written up or disciplined at any time as a result of any actions or activities involving the Plaintiff. Id. Arrowood asserts that he has never heard Lt. DeGeorgis sing the Dukes of Hazzard theme song and he did not attempt to provoke Plaintiff by standing outside his cell door or outside his back window and masturbate on January 4, 2011, or any other time. Id. Arrowood states that he did speak with Investigator Lane about Plaintiff's allegations and told him they were not true, and that he was not moved to any other part of the prison in March and May 2012 for any reason relating to the Plaintiff or as a disciplinary measure. Id.

  Defendants submitted the affidavit of Lt. Brian DeGeorgis who attests that he is a Lieutenant with the SCDC assigned to PCI. (DeGeorgis affidavit, doc.# 145-8). In December 2011, Plaintiff was housed in the SMU at PCI. Id. DeGeorgis described the SCDC policy for the SMU and why and how an inmate and his cell is searched which is the same as outlined in Arrowood's affidavit set out above. Id. DeGeorgis attests that he has never observed Sgt. Arrowood, Officer Thurber or Officer Eich doing anything inappropriate with regard to the Plaintiff or in the Plaintiff's presence, including never seeing an officer with an erection, masturbating or engaging any other sexual activity in Plaintiff's presence. Id. He attests that he never sang the Dukes of Hazzard theme song

or "I've Got Friends in High Places" in the SMU and has never referred to himself as "Luce Boot Dingleberry" or anything similar having no idea what that phrase would mean. Id.[2]

Defendants submitted the affidavit of Brandon Eich who attests that he is designated in Plaintiff's complaint as Brandon "Eicu." (Eich affidavit, doc. #145-12). He is an officer employed by the SCDC and assigned to PCI. Id. He has never been transferred or reassigned as a result of disciplinary action or anything to do with the Plaintiff. Id. Eich attests to the SCDC policy for searches of inmates housed in the SMU and their cells as set out above by Arrowood. Id. He recalls searching Plaintiff's cell in December 2011 with Sgt. Arrowood and Officer Thurber. Id. Sgt. Arrowood was at the door securing the Plaintiff and did not place significant pressure on the door. Id. He did not leave the cell as a result of anything Arrowood or Thurber did. Id. He has never observed Sgt. Arrowood with an erection. Id. He did not at that time or any time observed Sgt. Arrowood masturbating or encouraging or participating in any sexual misconduct. Id. Eich did not on December 24, 2011, or any other time tell Plaintiff or anyone else, "Arrowood messed up this time because that one wrote him up" or any other similar statements as alleged by Plaintiff. Id. He has never heard Lt. DeGeorgis sing the Dukes of Hazzard theme song or refer to himself as "Luce Boot Dingleberry." Id. Eich spoke with Investigator Lane and told him Plaintiff's allegations were false. Id.

Defendants submitted the affidavit of Donald Lane who attests he is an Investigator with the SCDC. (Lane affidavit, Doc. # 145-13). He received information that the Plaintiff was alleging that an officer masturbated in his presence during a shakedown of his cell in the SMU. Lane opened an

---

[2] Defendants submitted the affidavits of McCall, Thurber, and Lt. Harouff which mirror the affidavits set out above and will not be repeated herein.

investigation and spoke with the Plaintiff, Sgt. Arrowood, Officer Eich, and Officer Thurber about the allegations. Id. The allegations were denied by all. Id. Plaintiff's allegations were that Sgt. Arrowood had an erection and was masturbating or fondling himself through his clothing while his cell was being shaken down. Id. Based on Plaintiff's version, there was no physical contact of a sexual nature alleged between officers and the Plaintiff. Plaintiff did not allege any verbal threat and Plaintiff stated that the officers were fully clothed throughout. Id. Lane found no evidence to support Plaintiff's allegations and closed his investigation declaring the charges to be unfounded. Id. Lane attached a copy of his investigation summary prepared at the time of his investigation to his affidavit as Exhibit A. Id.

## ANALYSIS

Plaintiff's claims of sexual harassment fail. Plaintiff alleges that Officer Arrowood masturbated once inside his cell and outside his cell. Plaintiff only claims that he feared he was going to be raped but was not. Plaintiff never alleges Defendant Arrowood touched or threatened him. Plaintiff does not assert that he was touched or physically injured in any way from the alleged conduct of Officer Arrowood.[3] Also, any constitutional claims based on the allegations that Officer DeGeorgias sang the Dukes of hazzard them song or referred to himself by a nickname fails. See McCoy v. Bazzle, No. 08–2930, 2009 WL 3169963, at *4 (D.S.C. Sept.28, 2009) (Prison captain

---

[3] Although Plaintiff may be attempting to allege that he has suffered emotional distress from Defendants' actions or inactions, there is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there is no liability under § 1983 regarding such claims. See Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir.1985), cert. denied, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987); Rodriguez v. Comas, 888 F.2d 899, 903 (1st Cir.1989).

allegedly touching inmate on his buttock when he was going back to his cell, absent any showing of physical injury, failed to establish facts sufficient to support a claim for violation of the Eighth Amendment); Calhoun v. Vicari, 05–4167, 2005 WL 2372870, at * 5 (D.N.J.Sept.26, 2005) (holding that sexual gestures, jokes, and slap on the buttock not sufficiently serious to satisfy the objective component of an Eighth Amendment); Austin v. Terhune, 367 F.3d 1167, 1171–72 (9th Cir.2004) (holding that the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment); Adkins v. Rodriguez, 59 F.3d 1034 (10th Cir.1995) (verbal sexual harassment by jailer, while outrageous, does not amount to a violation of the inmate's Eighth Amendment rights); see also Allen v. Wine, No. 07–2945, 2008 WL 4691779 at *5 (7th Cir. Oct.8, 2008) (finding "sexual harassment consisting of words and gestures, rather than any physical abuse" insufficient to state a cognizable Eighth Amendment claim); Johnson v. Medford, 208 F.Supp.2d 590, 592 (W.D.CN.C. Feb. 26, 2002), aff'd, No. 02-6415, 2002 WL 1269973  (4th Cir. June 7, 2002) (unpublished); Williams v. Anderson, No. 03-3254, 2004 WL 2282927, at *4 (D.Ka. Sept. 7, 2004) (Finding that prison guard's sexually degrading remarks, exposing himself to the Plaintiff, and grabbing Plaintiff's buttock, however, outrageous, unacceptable and despicable, failed to satisfy the objective component of an Eighth Amendment violation) (Motion to Dismiss). Thus, it is recommended that summary judgment be granted for Defendants on these claims.

As to any claim as to conditions of confinement for conducting an inspection of his cell and/or strip search, Plaintiff's claims fail. At the time of the allegations, Plaintiff was housed in the SMU where inmates are subject to strip searches for weapons and contraband as a security measure. "[T]he Constitution does not mandate comfortable prisons, and prisons  . . .  which house persons convicted of serious crimes, cannot be free of discomfort." Rhodes v. Chapman, 452 U.S. 337, 349,

101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). "To the extent such conditions are restrictive and even harsh, they are part of the penalty that criminals pay for their offenses against society." Id. at 338. Inmates do not enjoy a right to be free from all indignities. Routine strip searches of segregated inmates based upon security concerns have been upheld by numerous courts. See, e.g., Rickman v. Avanti, 854 F.2d 327, 328 (9th Cir.1988) (prison policy requiring prisoners in segregation unit to submit to strip searches when leaving their cells for recreation, medical treatment, visitation, and use of law library was found constitutional); Goff v. Nix, 803 F.2d 358, 370-71 (8th Cir.1986), *cert. denied*, 484 U.S. 835, 108 S.Ct. 115, 98 L.Ed.2d 73 (1987) (visual body cavity search of segregation unit inmates before and after going to exercise area to prevent passage of contraband constitutional); Campbell v. Miller ,787 F.2d 217, 228 (7th Cir.1986), *cert. denied*, 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986) (permitting visual body cavity searches of high security inmates being transported to law library). Accordingly, it is recommended that Defendants' motion for summary judgment be granted with respect to this issue.

If Plaintiff is attempting to raise a claim of indifference to a risk of harm pursuant to the Eighth Amendment as to any of the Defendants, the claim fails. To hold a prison official liable under the Eighth Amendment, the prison official must know of and disregard an excessive risk to inmate health or safety. The Supreme Court has defined "deliberate indifference" in the context of the liability of physical injury to an inmate. In analyzing case law, the court concluded that deliberate indifference must be something more than mere negligence, but less than purposeful or knowing conduct. The court held: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "Actual knowledge or

awareness on the part of the alleged inflicter thus becomes essential to proof of deliberate indifference because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment." Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 105 (4th Cir.1995). Plaintiff has presented no evidence or made any allegations that he was harmed by any alleged conduct to show that any named Defendant was deliberately indifferent to a known risk of harm to him. Farmer, 511 U.S. at 842.[4]

As to any allegations by Plaintiff that his grievances were not handled properly, it is recommended that these allegations be dismissed as there is no constitutional right to participate in grievance proceedings. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

**PENDENT JURISDICTION**

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

**QUALIFIED IMMUNITY**

---

[4] If Plaintiff is attempting to hold any of the Defendants liable for the actions of their employees, the claim fails. Under the doctrine of respondeat superior, an employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) and Fisher v. Washington Metro Area Transit Authority, 690 F. 2d 1133, 1142-43 (4th Cir. 1982).

Defendants argue that they are all entitled to qualified immunity. Defendants assert Plaintiff cannot establish that any Defendant violated a constitutional right.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the Plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609 (1999); *see also* Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Wilson, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir. 1998).

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of

> which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a Plaintiff to recover, he must show the Defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent or that defendants were deliberately indifferent to a known risk of harm or serious medical need. As discussed above, the Plaintiff in this case has not done so. Thus, he fails to show a violation of a constitutional right.

### III.  CONCLUSION

Based on the above reasoning, Plaintiff has failed to show that Defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983.  It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by Defendants (doc. #145) for summary judgment be GRANTED IN ITS ENTIRETY.

IT IS FURTHER RECOMMENDED that Plaintiff's motion for summary judgment (doc. # 178) be DENIED and any other outstanding motions be deemed MOOT.

                                      Respectfully submitted,

                                      s/Thomas E. Rogers, III
                                      Thomas E. Rogers, III
                                      United States Magistrate Judge

November 7, 2013
Florence, South Carolina
**The parties' attention is directed to the important information on the attached notice.**